**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRENCE L. ROBINSON-BEY, | ) | CASE NO. 5:20-CV-01809-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN ED SHELDON, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

I.      **Introduction**

Terrence L. Robinson-Bey ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of eighteen years for abduction, felonious assault, having weapons while under disability, and repeat violent offender and firearm specifications. (ECF No. 1, PageID #: 1; ECF No. 5-1, PageID #: 125). He now asserts four grounds for relief. (*See generally* ECF No. 1). Warden Ed Sheldon ("Respondent") filed a return of writ on January 29, 2021. (ECF No. 5). Petitioner filed a "reply" on February 29, 2021, and Respondent filed a sur-reply on March 8, 2021. (ECF Nos. 7, 8). Finally, Petitioner filed a reply to the sur-reply on April 1, 2021. (ECF No. 9).

This matter was referred to the Court under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition and other case-dispositive motions. Because Petitioner has presented non-cognizable, procedurally defaulted, and meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

II.      **Relevant Factual Background**

1

The Ohio Court of Appeals for the Ninth Appellate District set forth the following facts[1]

on direct appeal:

> {¶2} One afternoon, B.H. agreed to meet Mr. Robinson-Bey, her ex-boyfriend, at a store not far from her home. She walked to the store and, when Mr. Robinson-Bey arrived, she got into his car. The two rode around and conversed peaceably for some time. When Mr. Robinson-Bey began asking about B.H.'s current boyfriend, however, she became uncomfortable. She informed Mr. Robinson-Bey that his questions were inappropriate, and the two began arguing. She then repeatedly asked Mr. Robinson-Bey to let her out of the car. Each time she asked, he refused to stop.
>
> {¶3} As the car approached a four-way stop, B.H. decided that she would simply jump from the car when Mr. Robinson-Bey slowed. She gathered her things and, as the car slowed, she opened the door and jumped out. Her left leg was still inside the car when she heard a gunshot. Not realizing that she had been struck, she ran a moderate distance before she was forced to stop. She then looked down and saw a bullet wound in her leg. Before she could react, Mr. Robinson-Bey arrived on foot. With a gun held down to his side, he grabbed B.H. and walked her back to his car.
>
> {¶4} Mr. Robinson-Bey kept B.H. in his car until later that evening. The two drove to various locations and, at one point, stopped at store to obtain peroxide for her leg. B.H. eventually convinced Mr. Robinson-Bey to take her to her cousin's house and managed to elude him once they were inside. After hiding for a brief period of time, she slipped outside, walked to a gas station, and called her boyfriend for help. Her boyfriend then took her to the hospital, where she received treatment for the gunshot wound to her leg.
>
> {¶5} Mr. Robinson-Bey was indicted on charges of kidnapping, felonious assault, and having a weapon under disability. His kidnapping and felonious assault counts both carried a firearm specification and a repeat violent offender ("RVO") specification. To minimize the jury's exposure to his prior convictions, Mr. Robinson-Bey elected to try his RVO specifications to the bench. He also agreed to stipulate, for purposes of his weapon under disability count, that he had a prior conviction for a felony offense of violence. Both parties agreed that the jury would hear their

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

stipulation, but would not receive a certified copy of Mr. Robinson-Bey's prior conviction.

{¶6} The trial commenced, and, near the conclusion of the State's case, the lead detective testified that Mr. Robinson-Bey had been "arrested for bank robbery a couple times." Mr. Robinson-Bey objected, and the court immediately sustained the objection, struck that testimony from the record, and issued a curative instruction. The parties then approached the bench, and Mr. Robinson-Bey moved for a mistrial. After hearing arguments from both parties, the court denied the motion for a mistrial.  It also denied the motion when Mr. Robinson-Bey renewed it at the close of the State's case.

{¶7} At the conclusion of trial, the parties presented their exhibits for admission. One of the State's exhibits was a copy of a certified conviction for armed bank robbery that Mr. Robinson-Bey committed in 1992. Another was a copy of his computerized criminal history ("CCH"), listing all of his arrests and convictions from 1981 to present. The parties agreed that neither of the foregoing exhibits (collectively, "the non-jury exhibits") would be presented to the jury. The certified conviction was admitted strictly for purposes of the record as the basis for the weapon under disability charge. Meanwhile, the CCH was admitted strictly for purposes of the court's decision on the RVO specifications. The court accepted both the non-jury exhibits as being offered for those limited purposes. In accordance with the parties' stipulation, it instructed the jury that Mr. Robinson-Bey had been convicted "of a felony offense of violence."

{¶8} The jury found Mr. Robinson-Bey not guilty of kidnapping, guilty of the lesser-included offense of abduction, and guilty of his remaining counts and firearm specifications. After the court excused the jury, the parties discovered that the non-jury exhibits had inadvertently been given to the jury along with the other exhibits. Mr. Robinson-Bey then filed a Crim.R. 29(C) motion for acquittal. In his motion, he argued that the State had set forth insufficient evidence, the non-jury exhibits had influenced the jury's decision, and, but for those exhibits, the jury would not have convicted him. The State filed a response in opposition to Mr. Robinson-Bey's motion.

{¶9} The court held a hearing on Mr. Robinson-Bey's motion. While the court acknowledged that the non-jury exhibits had inadvertently been given to the jury, it deemed the error harmless. It also found that the State had presented sufficient evidence on each of Mr. Robinson-Bey's counts. Accordingly, it denied Mr.

> Robinson-Bey's motion. As to the RVO specifications, the court dismissed the one linked to the kidnapping count and found Mr. Robinson-Bey guilty of the remaining specification. The court sentenced him to a total of 18 years in prison.

*State v. Robinson-Bey*, No. 28740, 127 N.E.3d 417, 421–22 (Ohio Ct. App. Dec. 26, 2018).

### III.  Relevant State Procedural History

#### a.  Indictment, Trial, and Sentencing

Petitioner was indicted on April 19, 2017 for the following counts:

> COUNT I: Kidnapping, a felony in the first degree, in violation of O.R.C. § 2905.01(A)(3)
>
> COUNT II: Felonious Assault, a felony in the second degree, in violation of O.R.C. § 2903.11(A)(2), with firearm specification, in violation of O.R.C. § 2941.145
>
> COUNT III: Having Weapons While Under Disability, a felony in the third degree, in violation of O.R.C. § 2923.13(A)(2)

(ECF No. 5-1, PageID #: 102–04). At arraignment, Petitioner pleaded not guilty to the charges in the indictment. (*Id.* at PageID #: 105). On May 19, 2017, the State filed a supplemental indictment adding a firearm specification to Count One and repeat violent offender specifications to Counts One and Two. (*Id.* at PageID #: 106).

The matter proceeded to trial, and the jury found Petitioner not guilty of kidnapping, but guilty of the lesser included offense of abduction with a firearm specification. (*Id.* at PageID #: 124). The jury also found Petitioner guilty of felonious assault and having weapons while under disability, with a firearm specification on Count Two. (*Id.*). The Court found Petitioner guilty of the repeat violent offender specification on Count Two. (*Id.*).

Accordingly, the court sentenced Petitioner to two years for abduction, eight years for felonious assault, and three years for having weapons while under a disability. (*Id.* at PageID #: 125). The Court also imposed three years for each firearm specification and two years for the

4

repeat violent offender specification. (*Id.*). Petitioner was to serve all the sentences consecutively, except for the three-year sentence on Count Three, which the Court ordered Petitioner to serve concurrently with the other sentences. (*Id.* at PageID #: 126). The sentences amounted to an aggregate imprisonment of eighteen years.

### b.  Direct Appeal

Petitioner filed a notice of appeal on August 14, 2017 and an appellate brief on February 8, 2018 with the Ninth District of the Ohio Court of Appeals (*Id.* at Exs. 8 (notice), 9 (brief)). In his appeal, he raised five assignments of error:

> 1. The introduction of Mr. Robinson-Bey's criminal history deprived him of due process and a fair trial
>
> 2. Mr. Robinson-Bey's conviction for adduction (sic) violated his due process rights and right to juror unanimity pursuant to Criminal Rule 31(A)
>
> 3. The trial court erred in denying Mr. Robinson-Bey's request for a lesser offense jury instruction
>
> 4. Mr. Robinson-Bey's RVO conviction must be reversed based upon an unsupportable irregularity in the proceedings
>
> 5. The evidence presented was insufficient to support Mr. Robinson-Bey's convictions

(*Id.* at PageID #: 137). The State filed an opposition brief on April 10, 2018, and Petitioner filed a reply on April 24, 2018. (*Id.* at Exs. 10, 11). On December 26, 2018, the appellate court rejected Petitioner's assignments of error. (*Id.* at Ex. 12).

Petitioner filed a notice of appeal and motion for leave to file a delayed appeal with the Supreme Court of Ohio on May 23, 2019. (*Id.* at Exs. 13, 14). The Supreme Court granted Petitioner's motion for leave on July 23, 2019 and ordered him to file a memorandum in support of jurisdiction within thirty days of the entry. (*Id.* at Ex. 15).

Petitioner filed a memorandum in support of jurisdiction on August 5, 2019 with the following propositions of law:

> 1. The evidence presented was insufficient to support Appellant's convictions in violation of the Fourteenth Amendment
>
> 2. The introduction of Appellant's criminal history deprived him of due process and a fair trial
>
> 3. The Appellant['s] conviction for adduction (sic) violated his due process rights and right to juror[s'] unanimity pursuant to Crim.R. 31(A)
>
> 4. The trial court erred in denying Appellant['s] request for a lesser offense jury instruction

(*Id.* at PageID #: 298). The State did not file a response. The Supreme Court of Ohio declined to accept jurisdiction on October 15, 2019. (*Id.* at Ex. 17).

### c. Application for Reopening

Petitioner then filed an application to reopen his direct appeal with the Ninth District on March 15, 2019. (*Id.* at Ex. 18). He raised the following assignments of error (sic throughout):

> 1. Failure assign error of Trial Counsel to obtain an affidavit from Jurors of their statement
>
> 2. Failure to raise issue of trial counsel was ineffective by not requesting a *Remmer* hearing of the jurors which therefore caused defendant an deficient representation that clearly presented the likelihood of affecting the verdict. *United States v. Rigsby*, supra. 45 F.3d at 124-125
>
> 3. Failure to raise issue trial counsel was ineffective by not listening to defendant instruction to Bifurcate defendant weapon under disability and allowed it to be used to back door defendant record based on two weapon specifications that overshadow the void of evidence of the one weapon being given two different descriptions by the victim, the inconsistent testimony, and proof that defendant knowingly pulled the weapon. See (T.T. 230)

      4. Failure to raise issue trial counsel refuse to file a motion for a mistrial of defendant CCH record going before jurors instead of an acquittal See 120 S. Ct. 1029, 145 L.Ed. 2d 985 (2000)

      5. Failure to raise issue trial counsel gave misleading advice that kept defendant from going on stand to reveal why he made statement and did not knowing fire a weapon, by counsel advice its best defendant CCH not be raised, which somehow made its way back to be viewed by jurors but base on the . . . advice defendant did not take the stand. . . . All of which was in violation of substantial Fifth, Sixth, and Fourteenth Constitutional Right of Equal Protection and Due Process of Law Consequently RobinsonBey repeatedly ask this court to vacate his convictions.

(*Id.* at PageID #: 336–37). The State did not file a response brief. The Court of Appeals denied the petition on May 28, 2019. (*Id.* at Ex. 19).

      Petitioner filed a notice of appeal and memorandum in support of jurisdiction to the Supreme Court of Ohio on June 28, 2019. (*Id.* at Exs. 20, 21). He raised the following propositions of law in his brief:

      1. Appellant (sic) Counsel was ineffective by failing to assign error to attorney failure to obtain affidavit from jurors at trial

      2. Appellant (sic) counsel was ineffective by failing to assign error to trial attorney failure to move for mistrial

      3. Appellant (sic) counsel failed to assign ineffective error of trial attorney advice not to take the stand at trial

      4. Appellant (sic) counsel was ineffective by failing to assign error of trial attorney failure to bifurcate weapon issue

      5. Appellant (sic) counsel was ineffective by failing to assign error of trial attorney failure to file for a *Remmer* hearing

(*Id.* at PageID #: 358). The Supreme Court declined to accept jurisdiction of the appeal on August 20, 2019. (*Id.* at Ex. 22).

      **d.  Federal Habeas Corpus Petition**

7

Petitioner petitioned pro se that this Court issue a writ of habeas corpus on August 14, 2020. (ECF No. 1). He asserted the following grounds for relief:

> **Ground One**: Did introduction of criminal history violate stipulation.
>
> **Supporting Facts**: 1. It['s] no dispute both parties agreed to Petitioner offer to stipulate to a prior offense of violence []absent the name or nature of offense. 2. Before both state's prosecutor and trial counsel committed a dereliction of duty declining to examine evidence box before sent back, where jurors viewed complete criminal history of non-jury exhibits. Also prosecutor wittness (sic) and and Court reveal same without stand taken.
>
> **Ground Two**: Did conviction for abduction violate due process and right to jury unanimity.
>
> **Supporting Facts**: 1. The jurors was instructed they could find Petitioner guilty or not guilty of abduction in violation of R.C. 2905.02(A)(1) or (A)(2). 2. The jury did neither. Rather, the jury return a verdict which failed to cite neither the statute number nor the elements. 3. There is no single offense entitled "abduction." Any one of three offenses under abduction (A)(1), (A)(2), or (A)(3) can be listed separate offenses.
>
> **Ground Three**: Under Equal Protection did Court error denying lesser offense instruction of negligent assault.
>
> **Supporting Facts**: Court refused lesser offense instructions based on false testimony of record, and a statement made by Petitioner under duress of being falsely charge with kidnap. Victim testified never seen weapon pointed, aim, deliberately discharge. Negligent mishandling is conceivable and conviction of presumed speculation. . .
>
> **Ground Four**: Unsupported irregularity in proceedings.
>
> **Supporting Facts**: Trial court erred when meeting with the jury outside presence of the defense while jurors still deliberating. Such communication was an unsupportable irregularity in the proceedings.
>
> **Ground Five**: Presented insufficient evidence of elements.

> **Supporting Facts**: State fail to produce the knowingly element of
> felonious assault, victim did not see weapon discharge, victim
> describe two different weapons during alledge (sic) abduction, State
> did not offer evidence weapon was operable, did not examine
> projectile of one of two discribe (sic) guns.

(*Id.* at PageID #: 5–10).[2]

## IV.    Legal Standards

### a.    Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609–10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute that Petitioner timely filed his federal habeas corpus petition within the 28 U.S.C. § 2244(d) one-year statute of limitations.

### b.    Jurisdiction

§ 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." § 2241(d). The Court of Common Pleas of Summit County sentenced Petitioner,

---

[2] The Court notes that Petitioner raises additional habeas grounds in his traverse. (*See* ECF No. 7, PageID #: 1128–31). However, because these issues were not raised in his initial petition, or an amended petition, they are deemed waived. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also Braun v. Comm's of Soc. Sec.*, 2021 WL 8016061, at *12 (N.D. Ohio Apr. 7, 2021) ("It is well established that arguments made for the first time in a reply brief are waived.").

and Summit County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### c. Cognizable Federal Claim

Under § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review a state court's decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### d. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007) (citing § 2254(b) and (c)). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*,

10

336 F. Supp. 2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id*. (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### e. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732–33. To be

adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert its legal *and* factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

12

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### f.  AEDPA Standard of Review

§ 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal

13

claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528

14

(2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

V.     **Discussion**

    a.  **Ground One – Not Cognizable**

In Ground One, Petitioner alleges the parties violated a trial stipulation by accidentally sending his full criminal history to the jury in an evidence box. (ECF No. 1, PageID #: 5). The parties had stipulated to a prior conviction, an element in Count Three, in lieu of discussing Petitioner's criminal history at trial. (*Id*.); *see also Robinson-Bey*, 127 N.E.3d at 426. By

accidentally sending Petitioner's criminal history to the jury, he argues this violated the purpose of the stipulation. (ECF No. 1, PageID #: 5). Respondent argues this ground is non-cognizable and fails to rise to a level of a denial of due process. (ECF No. 5, PageID #: 79–83).

The Court agrees that Ground One is non-cognizable as Petitioner fails to allege any violations of his constitutional rights as is required for AEDPA review. *See Bates*, 934 F.2d at 101; *Bey*, 500 F.3d at 519. Petitioner merely alleges that the parties broke a trial stipulation but alleges no infringement of any constitutional rights or statutes. Accordingly, this claim cannot be reviewed under AEDPA, and the Court recommends it be dismissed.

### b.  Ground Two – Procedurally Defaulted

Petitioner alleges his abduction conviction violated his due process rights and "right to jury unanimity" in Ground Two. (ECF No. 1, PageID #: 7). In his supporting facts, he references the court's jury instruction regarding lesser included offenses, arguing that the jury "return[ed] a verdict which failed to cite neither the statute number nor the element" of abduction. (*Id.*). Finally, he argues that abduction is not listed as on offense in O.R.C. § 2905.02(A)(1), (2), or (3). (*Id.*). Petitioner raised this claim on his direct appeal to the Ohio Court of Appeals and again in his appeal to the Supreme Court of Ohio. (ECF No. 5-1, PageID #: 141, 298).

Respondent argues this ground is procedurally defaulted since the Ohio Court of Appeals reviewed and rejected the claim under plain error analysis, an independent and adequate state law ground. (ECF No. 5, PageID #: 72–76). Accordingly, Respondent argues Petitioner meets each prong for procedural default under *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).

Federal courts must complete a four-part analysis to determine if a claim was procedurally defaulted based on an adequate and independent state law ground. *Maupin*, 785 F.2d at 138; *Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (citing *Maupin*). A court must decide whether:

(1) the petitioner failed to comply with a state procedural rule, (2) the state courts enforced the procedural rule, and (3) the procedural rule is an "adequate and independent" state ground that forecloses review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, even if the procedural rule was an adequate and independent ground, a petitioner can bypass procedural default by demonstrating cause for the procedural violation and actual prejudice. *Id.*

This case meets the first three prongs of the *Maupin* test. Rule 103 of the Ohio Rules of Evidence requires parties to make timely objections and offer explanations, if necessary. Ohio Evid. R. 103. Here, Petitioner did not object to the trial court's jury instruction about lesser included offenses, included abduction, at trial. *Robinson-Bey*, 127 N.E.3d at 428. Instead, he first raised the issue on direct appeal to the Ohio Court of Appeals. *Id.* As a result, the Ohio Court of Appeals reviewed the alleged error for plain error. *Id.* Petitioner's failure to make a timely objection at trial was an adequate and independent ground to foreclose habeas review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 336 (6th Cir. 2012) ("[F]ailure to adhere to the 'firmly-established Ohio contemporaneous objection rule' is 'an independent and adequate state ground' of decision.") (citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006) (holding that the petitioner's claim was procedurally defaulted as petitioner's violation of Ohio's contemporaneous rule objection constituted an "adequate and independent" ground)); *see also Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017) (same).

As plain error review does not address the merits of a claim, the appellate court's review did not address the merits of the claim. *See Grayer v. McKee*, 149 F. App'x 435, 441–42 (6th Cir. 2005) (differentiating review on the merits and plain error analysis); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008) ("The court's plain-error review is not considered a review on the merits, and therefore Jells has procedurally defaulted on this claim if no exception is applicable."); *Keith*

*v. Mitchell*, 455 F.3d 662, 673–74 (6th Cir. 2006) ("[T]he Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue for Keith."). Accordingly, this claim is procedurally defaulted.

Since Petitioner has alleged no cause or prejudice[3] in his habeas petition, the fourth *Maupin* prong does not apply. 785 F.2d at 138. Accordingly, the Court recommends Ground Two be dismissed as it is procedurally defaulted.

### c.  Ground Three – Not Cognizable

 Petitioner argues that the trial court erred in refusing to offer a lesser included offense instruction for negligent assault, in violation of Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1, PageID #: 8). He raised this claim on direct appeal to the Ohio Court of Appeals and the Supreme Court of Ohio. (*See* ECF No. 5-1, PageID #: 141, 298). Respondent argues this clam is non-cognizable since failure to give a jury instruction "can never amount to a constitutional violation in a non-capital case." (ECF No. 5, PageID #: 84–86).

The Sixth Circuit has held that "[t]he failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc), cert. denied, 496 U.S. 929 (1990) (citing cases); *see also McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014), cert. denied, 575 U.S 903 (2015). It is "conceivable," however, that failure to instruct regarding a lesser included offense in a non-capital case might be cognizable on federal habeas review where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included

---

[3] The Court notes that Petitioner references "prejudice" in his traverse. (ECF No. 7, PageID #: 1120–21). But even assuming this meets the prejudice prong to override procedural default, Petitioner has still failed to demonstrate cause, which is required.

offense instruction in clear defiance of state law." *Bagby*, 894 F.2d at 795. However, the Sixth Circuit emphasized these occasions would occur only in the "most unusual circumstances," such as where the failure to give the instruction likely resulted in the conviction of an innocent person. *See id.*

Here, Petitioner has failed to demonstrate how the trial court's refusal to instruct on a lesser included offense resulted in a miscarriage of justice or was inconsistent with the demands of fair procedure. Although Petitioner argues his request for a negligent assault instruction was "firmly supported by the evidence," his argument centers on the State's alleged inability to prove he knowingly discharged a weapon. (*See* ECF No. 7, PageID #: 1122). Simply attacking one element of the State's case does not amount to demonstrating the "most unusual circumstances" that constitute a miscarriage of justice. *See Bagby*, 894 F.2d at 795. Thus, his challenge remains non-cognizable. *Id.* at 797; *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002), cert. denied, 537 U.S. 1192 (2003). Accordingly, this Court recommends Ground Three be dismissed.

### d.  Ground Four – Procedurally Defaulted

In Ground Four, Petitioner alleges an "unsupported irregularity in proceedings," namely, that the trial court met with the jury during deliberation without defense counsel present. (ECF No. 1, PageID #: 10). While he raised this claim on direct appeal to the Ohio Court of Appeals, he failed to raise it as a proposition of law in his appeal to the Supreme Court of Ohio. (*See* ECF No. 5-1, Exs. 9, 16). Respondent therefore argues that Ground Four is procedurally defaulted for Petitioner's failure to exhaust the claim in his appeal to the Supreme Court of Ohio. (ECF No. 5, PageID #: 76–78).

The Court agrees that Ground Four is procedurally defaulted since Petitioner failed to fully exhaust the claim in his appeal to the Supreme Court of Ohio. As the deadline to exhaust the claim has passed, and Petitioner can no longer raise the issue in state court, the claim is procedurally

defaulted. *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661. Likewise, because Petitioner has failed to demonstrate cause, prejudice, or a miscarriage of justice, he cannot resurrect his claim. *Coleman*, 501 U.S. at 750; *Williams*, 380 F.3d at 973. The Court accordingly recommends this ground be dismissed.

### e. Ground Five – Meritless

Petitioner finally claims there was insufficient evidence to convict him of felonious assault in Ground Five. (ECF No. 1, PageID #: 10). Specifically, he challenges the State's argument that he *knowingly* discharged a firearm, an element on the felonious assault charge. (*Id.*). Petitioner also alleges that the victim did not see the weapon discharge and that the State failed to offer evidence the firearm even worked. (*Id.*). He raised this claim on direct appeal to the Ohio Court of Appeals and the Supreme Court of Ohio. (ECF No. 5-1, Exs. 9, 16). Respondent argues that Petitioner's allegations about the operability of the firearm are procedurally defaulted because they were not fairly raised to the state courts on direct appeal. (ECF No. 5, PageID #: 76–78). However, Respondent admits he exhausted the remainder of the claim, as it relates to the knowledge element, in the state courts and that it is meritless. (*Id.* at PageID #: 90–97).

The Court agrees that the claim is procedurally defaulted to the extent that it challenges the firearm's operability. While Petitioner raised his insufficiency of the evidence claim in his direct appeal, he failed to specifically raise the operability theory in his appeal to the Supreme Court of Ohio. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *see also Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987) ("The doctrine of exhaustion requires that the same claim under the same theory be presented to state courts before raising it in a habeas petition."). Thus, this theory of the claim is procedurally defaulted. However, as Petitioner exhausted his sufficiency of the evidence claim as

it relates to the knowledge element of felonious assault, the Court will address this part of the claim on the merits.[4]

On direct appeal, the Ohio Court of Appeals[5] reviewed and rejected Petitioner's sufficiency of the evidence claim:

> {¶11} In his fifth assignment of error, Mr. Robinson-Bey argues that his convictions are based on insufficient evidence. We disagree.
>
> {¶12} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, 2017 WL 192648, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, 2016 WL 4141159, ¶ 25, citing *Thompkins* at 386, 678 N.E.2d 541. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In analyzing the sufficiency of the State's evidence, this Court does not "resolve evidentiary conflicts or assess the credibility of witnesses[ ] because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit, 2017-Ohio-73, 80 N.E.3d 1163, ¶ 10.
>
> {¶13} [. . .] A person commits felonious assault if he knowingly "[c]ause[s] or attempt[s] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). Finally, a person is guilty of having a weapon under disability if he has been convicted of "any felony offense of violence" and "knowingly acquire[s], [has], carr[ies], or use[s] any

---

[4] The Court notes that Petitioner fails to explicitly identify which constitutional rights were violated in Ground Five, which is required under AEDPA review. Nevertheless, the Court reviews it on the merits out of an abundance of caution since insufficiency of the evidence is often brought as a Fourteenth Amendment challenge.

[5] The Court notes that the following excerpt from the Court of Appeals discusses the operability of the firearm, but as discussed above, this part of the claim was later defaulted since the Petitioner never appealed the theory to the Supreme Court of Ohio. Furthermore, the Court pulls the Court of Appeals decision—even though the Petitioner appealed the knowledge theory to the Supreme Court—because it is the "last explained" decision as the Supreme Court declined review. *See Ylst*, 501 U.S. at 804.

firearm or dangerous ordnance * * *." R.C. 2923.13(A)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶14} Mr. Robinson-Bey argues that his convictions are based on insufficient evidence for two reasons. The first is that the State failed to set forth any evidence that the gun he allegedly used to shoot B.H. was operable. The second is that the State failed to set forth any evidence that he acted knowingly. He argues that the police never test-fired the gun they linked to his crimes and B.H. never saw him fire the gun. Because his alleged use of the gun formed the bases of his felonious assault charge, his weapon under disability charge, and his firearm specifications, he argues that those convictions must be reversed.

{¶15} B.H., the victim in this matter, testified that she and Mr. Robinson-Bey used to be romantically involved, but that she ended their relationship. One afternoon, she spoke with him on the phone and agreed to meet him at a neighborhood store. B.H. walked to the store and, when Mr. Robinson-Bey arrived, got into his car. The two then drove around for some length of time, chatting about various topics.

{¶16} At some point, Mr. Robinson-Bey began asking B.H. about her new boyfriend. She indicated that she was uncomfortable with his questions, and the two began arguing. B.H. testified that she asked Mr. Robinson-Bey to let her out of the car several times, but he refused. When she saw that they were approaching a four-way stop in a residential area, she decided that she would simply jump out of the car. She held her purse, waited until the car slowed, and then opened the door to jump out.

{¶17} B.H. testified that her right leg was clear of the car, but her left leg was still partially inside when she heard a gunshot. She stated that she did not initially feel any pain, so she began running through the neighborhood. After about two blocks, however, her speed decreased and she found herself unable to continue. She then looked down at her left leg for the first time and saw a hole in her pants and blood. At that point, she realized that Mr. Robinson-Bey had shot her in the leg. She testified that, by the time she looked up, Mr. Robinson-Bey was there. He had a gun in his right hand and held it down to his side as he grabbed her and walked her back to his car.

{¶18} B.H. testified that she began rambling and making promises to Mr. Robinson-Bey because she was afraid he might kill her. She

22

could no longer run because she was in a lot of pain, so she got into his car when he held the door open. The two continued to drive around, and B.H. expressed that she needed to go to the hospital. She testified that Mr. Robinson-Bey repeatedly refused to take her there, so she eventually suggested that they go to Family Dollar to buy peroxide. He agreed to do so, but did not get out of the car when they arrived. Instead, he called a stranger over to the car, gave the stranger money, and asked him to go inside the store and buy the peroxide. The stranger obliged and, once Mr. Robinson-Bey had the peroxide in hand, he began driving around again.

{¶19} According to B.H., she ultimately convinced Mr. Robinson-Bey to drive her to her cousin's house, emphasizing that she needed to use the restroom. Though he relented, he did not want to let her out of the car when they arrived. B.H.'s cousin was having a birthday party, and Mr. Robinson-Bey believed that she would tell her family members what had happened once inside. B.H. then told Mr. Robinson-Bey to come inside with her so that she could just use the restroom.

{¶20} Once they were inside the house, Mr. Robinson-Bey followed B.H. everywhere with his gun in his pocket. Although her cousin saw her leg and B.H. indicated that Mr. Robinson-Bey had shot her, she testified that none of her family members took her seriously and believed that she had been struck by a B.B. Even so, several of them eventually confronted Mr. Robinson-Bey, and B.H. took that opportunity to elude him. She then hid in the basement for some time before leaving on foot.

{¶21} After leaving her cousin's house, B.H. walked to a gas station and called her boyfriend for help. She indicated that she did not call the police from her cousin's house or ask her family for help because she was not sure where Mr. Robinson-Bey had gone and believed he was still searching for her. Likewise, she never used her cell phone to call for help while in his car because she feared he would harm her if she tried. She later discovered that she had accidentally pocket-dialed her boyfriend while in the car with Mr. Robinson-Bey. She testified, however, that she never actually spoke with her boyfriend until she called him from the gas station. Once he came to the gas station, he took her to the hospital where she was treated for a gunshot wound to her left leg. There was evidence that the bullet entered through the back of her leg and exited the front without striking any bones or major arteries.

{¶22} B.H.'s boyfriend testified that B.H. called him that evening, told him she had been shot, and asked him to pick her up from a gas

station. He immediately drove there and, when he arrived, B.H. showed him her gunshot wound. She told him that she had been in Mr. Robinson-Bey's car, that he had refused to let her out, and that he had shot her. B.H.'s boyfriend then drove her to the hospital for treatment.

{¶23} B.H.'s boyfriend indicated that he had received a call from B.H.'s phone earlier in the day, but, when he answered, all he heard was "rustling, and a lot of scuffling and stuff like that." He stated that he could hear B.H.'s voice in the background, as well as a faint male voice. When he repeatedly called out to her, however, she would not respond. He ended the call after a few minutes and tried calling back, but there was no answer. Aware that B.H. had planned to be at home alone that day and concerned for her safety, he decided to call 911. He testified that he ultimately met a police officer at B.H.'s house and looked around, but no one was there. He then returned home and received B.H.'s call from the gas station later that evening.

{¶24} Officer Kevin Rybka spoke with B.H. at the hospital. B.H. told him that she had been riding in Mr. Robinson-Bey's car when they began to argue about her new boyfriend. She told him that Mr. Robinson-Bey would not let her out of the car, so she attempted to flee when they came to a stop sign. As she attempted to climb out, however, Mr. Robinson-Bey shot her in the leg, chased after her, and brought her back to the car. Consistent with her testimony, B.H. told Officer Rybka that Mr. Robinson-Bey continued to drive them around and eventually took her to Family Dollar, where he convinced a stranger to go inside and purchase peroxide for him. She also told the officer that she ultimately escaped when Mr. Robinson-Bey brought her to her cousin's house and she managed to elude him.

{¶25} After leaving the hospital, B.H. was transported to the police station and spoke with Detective Leonard Stephens. The State played the recording of her interview for the jury, and, in it, B.H. once again described how Mr. Robinson-Bey had kept her in his car and had shot her in the leg. Following her interview, the police arrested Mr. Robinson-Bey, and Detective Stephens interviewed him. The State also played the recording of his interview for the jury.

{¶26} During his recorded interview, Mr. Robinson-Bey stated that he had picked up B.H. the previous afternoon because she had called him for help. He repeatedly referred to her being involved in some kind of "situation," but did not elaborate other than to imply that it involved drugs and that she was asking him for money. He denied

that he held B.H. against her will or shot her. According to Mr. Robinson-Bey, B.H. was already injured when he picked her up, and she did not want to go to the hospital because she had drugs in her system. He acknowledged that they drove around most of the evening, stopping at Family Dollar to purchase peroxide, and eventually stopping at her cousin's house. When Detective Stephens asked Mr. Robinson-Bey why B.H. would accuse him of shooting her, he suggested that she might be lying to protect someone else, such as a drug dealer. He denied that he owned a gun or had access to a gun.

{¶27} Detectives Kelly Johnson and Daniel Gump searched Mr. Robinson-Bey's car following his arrest. Inside the car, they found a .38 caliber revolver wedged between the driver's seat and center console, as well as a pill bottle full of .38 caliber bullets in the rear pouch of the front passenger's seat. The revolver was empty upon recovery, but Detective Johnson testified that they were able to extract a bullet from the inside of the front passenger's door, in the area below the arm rest. Inside the car, the detectives also found a bottle of peroxide.

{¶28} Lindsey Rausch, a forensic scientist from the Bureau of Criminal Investigation ("BCI"), conducted DNA testing on the gun that the police found inside Mr. Robinson-Bey's car, as well as a swab they took from the passenger's seat of the car. She testified that the DNA she found on the swab from the passenger's seat was consistent with B.H.'s DNA. Additionally, she testified that DNA she found on the gun was consistent with Mr. Robinson-Bey's DNA.

{¶29} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt that the .38 caliber gun found inside Mr. Robinson-Bey's car was operable and that he knowingly shot B.H. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 at paragraph two of the syllabus. The jury heard testimony that the police found a gun in Mr. Robinson-Bey's car, that B.H. was shot from behind while attempting to flee the car, and that a bullet was extracted from the inside the front passenger's door. Further, the jury heard testimony that the two had been arguing, that Mr. Robinson-Bey had refused to let B.H. out of the car, and that he was carrying the gun when he grabbed her and walked her back to the car. Though no one test-fired the gun found in his car, a jury may infer a firearm's operability based on the totality of the circumstances. *See State v. Ware*, 9th Dist. Summit No. 22919, 2006-Ohio-2693, 2006 WL 1487053, ¶ 13. The totality of the circumstances herein support the inference that Mr. Robinson-Bey shot B.H. to prevent her from leaving and, thus,

acted knowingly and had possession of an operable firearm. *See id.*; R.C. 2901.22(B). The record does not support his assertion that his convictions are based on insufficient evidence. As such, his fifth assignment of error is overruled.

*Robinson-Bey*, 127 N.E.3d at 422–26.

The state court relied on state law—*State v. Jenks*—rather than federal law, in addressing the sufficiency of the evidence claim. *See* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) (syllabus). However, *Jenks* follows the sufficiency of evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the issue is whether the state court decision was an unreasonable application of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from Supreme Court decisions, but unreasonably applied that principle to the facts of Petitioner's case. *Williams*, 529 U.S. at 410–12; *Bolton v. Harris*, No. 1:18CV1164, 2021 WL 1930239, at *31 (N.D. Ohio Apr. 7, 2021), *report and recommendation adopted*, No. 1:18 CV 1164, 2021 WL 1929117 (N.D. Ohio May 13, 2021).

Under *Jackson*, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Sowders*, 894 F.2d at 794. The state court here correctly identified and applied the governing legal principle as set forth in *Jackson*. *See Robinson-Bey*, 127 N.E.3d at 425, 422.

On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), cert. denied, 566 U.S. 947 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings."

26

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). A federal habeas court may overturn the state court's sufficiency of the evidence decision "only if the state court decision was 'objectively unreasonable.'" *Id.* (citing *Cavazos*, 565 U.S. at 4).

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. at 324 n.16). Thus, the federal court must look to state law to determine the elements of the crime. *See Palmer v. Palmer*, No. 1:15-CV-458, 2018 WL 7891722, at *15 (W.D. Mich. Oct. 29, 2018), *report and recommendation adopted*, No. 1:15-CV-458, 2019 WL 1429258 (W.D. Mich. Mar. 29, 2019) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Petitioner now argues there was insufficient evidence to convict him of felonious assault since the State did not present enough evidence to prove he knowingly shot the victim. (ECF No. 1, PageID #: 10). However, he fails to demonstrate how the Ohio Court of Appeals made an unreasonable application of *Jenks* or interpretation of the case facts, as is required to prevail under AEDPA.

In fact, the state court clearly identified *Jenks* as the proper standard to review an insufficiency of the evidence claim. *See Robinson-Bey*, 127 N.E.3d at 422. Then, it applied *Jenks* to the facts of the case. The court provided an in-depth summary of the facts, detailing the victim's

testimony, law enforcement's testimony, and the .38 caliber gun found in Petitioner's car. *Id.* at 422–26. Based on the victim's testimony of when she was shot and her allegations that Petitioner shot her, as well as law enforcement finding a gun stashed in Petitioner's car, the court found that a rationale juror could have found that Petitioner knowingly shot the victim. *Id.* at 425–26. This is not an unreasonable interpretation of the law or facts, and Petitioner has failed to demonstrate the court's opinion was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 102. Accordingly, the Court agrees that Petitioner's conviction is supported by sufficient evidence and recommends Ground Five be dismissed as meritless.

## VI.    Certificate of Appealability

### a.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### b.  Analysis

Petitioner's grounds for relief are non-cognizable, procedurally defaulted, and meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial

28

showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VII.    Recommendation

Petitioner has presented only non-cognizable, procedurally defaulted, and meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: July 11, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).